WILLIAM J. CAMPBELL, PETITIONER, v. MICHAEL R. GRIFFIN, DISTRICT JUDGE OF THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA IN AND FOR CARSON CITY, NEVADA, RESPONDENT.

No. 15262

December 10, 1985 710 P.2d 70

[Rehearing denied December 19, 1985]

---

*Robert A. Bork,* State Public Defender, Carson City, for Petitioner.

*Brian McKay,* Attorney General, for Respondent.

## OPINION

*Per Curiam:*[1]

Petitioner William Campbell seeks a writ of prohibition or, alternatively, a writ of mandamus, precluding the respondent district court from proceeding against him in a criminal prosecu-

---

[1]This petition was previously denied on the merits in an unpublished order of this court. Upon motion of the respondent, we have determined that our decision should be issued in a published opinion. Accordingly, we hereby issue this opinion in place of our Order Denying Petition for Writ of Prohibition or, Alternatively, Mandamus filed October 22, 1985.

tion for one count of escape from the Nevada State Prison, a felony in violation of NRS 212.090.

On October 13, 1977, the state filed a criminal complaint against Campbell in justice's court alleging that he committed the crime of escape three days earlier, on October 10, 1977. The complaint was not supported by affidavits or other factual averments to establish probable cause for arrest. A warrant of arrest was issued on October 13, 1977, based upon the criminal complaint. Approximately four years later, Campbell was apprehended in Los Angeles County, California, and was retaken into the custody of the Nevada Department of Prisons on September 24, 1981.

On October 9, 1981, an amended criminal complaint was filed in justice's court against Campbell which contained affidavits and factual averments in support of probable cause. Campbell subsequently moved to dismiss the complaint on the ground that the three-year statute of limitations had expired and precluded the criminal action from proceeding against him.[2] The justice's court denied his motion, the matter proceeded to a preliminary hearing, and Campbell was bound over for trial.

In January of 1982, Campbell filed a pretrial petition for a writ of habeas corpus in the district court. Campbell again contended that the original complaint, which was filed shortly after his alleged escape, was invalid and that the statute of limitations had expired before the complaint was amended and corrected. On July 6, 1982, the district court denied Campbell's petition. The district judge reasoned that "[w]hile the [original] complaint may not have been sufficient to support probable cause for an arrest warrant it was [adequate] to put the defendant on notice of the crime charged and therefore sufficient to toll the statute of limitations as to the escape charge." Sixteen months later, Campbell petitioned this court for extraordinary relief, challenging the district court's order.[3]

Once again petitioner contends that the statute of limitations

---

[2]NRS 171.085(2) provides:

> An indictment for any other felony than murder, theft, robbery, burglary, forgery, arson or sexual assault must be found, or an information or complaint filed, within 3 years after the commission of the offense.

[3]Counsel for petitioner explains that he did not seek extraordinary relief from this court promptly after the district court denied his habeas petition because he did not believe extraordinary relief was appropriate at that time. Counsel states that he left the public defender's office for almost four months in late 1982 and 1983, and did not handle this case during that time. Counsel adds that when he returned to the public defender's office, Campbell presented new arguments to him concerning this issue that convinced him to pursue extraordinary relief. Cause appearing, we conclude that the doctrine

expired before the state filed its amended complaint, and that the statute had not been tolled by the original complaint because no facts were alleged therein to support a finding of probable cause. We need not reach the merits of this contention, however, because we have concluded that the crime of escape is a continuing offense and that, as such, the statute of limitations did not commence running until the crime was completed and petitioner was retaken into custody. The amended complaint, filed one month after petitioner was retaken into custody was, therefore, not barred by the statute of limitations. We deny the writ on this ground.

The Supreme Court held in United States v. Bailey, 444 U.S. 394, 413 (1980), that the crime of escape is a continuing offense. Petitioner contends, nevertheless, that the holding in *Bailey* was mandated by the federal statute of limitations, 18 U.S.C. § 3290 (1948), which specifically provides that "[n]o statute of limitations shall extend to any person fleeing from justice."[4] Petitioner asserts that because Nevada does not have a similar legislatively created tolling statute, we should not adopt the holding in *Bailey*. We disagree. The language used by the Court in *Bailey* clearly indicates that its holding was not based on the federal statute of limitations, but was instead based on important policy considerations. In particular, the Court in *Bailey* reasoned that "[g]iven the continuing threat to society posed by an escaped prisoner, '*the nature of the crime* involved is such that Congress must assuredly have intended that it be treated as a continuing one.' "[5] (Emphasis

---

of laches does not preclude extraordinary relief in this case. *See* Buckholt v. District Court, 94 Nev. 631, 584 P.2d 672 (1978).

[4]Petitioner also argues that, absent such a statute, the Supreme Court would have been constrained to apply the policies enunciated in Toussie v. U.S., 397 U.S. 112 (1970), that criminal statutes of limitation are to be liberally construed in favor of repose, and that the doctrine of continuing offenses should be applied only in limited circumstances. The Court held in *Toussie* that a particular offense should not be construed as a continuing one "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* at 115.

[5]The "nature of the crime" involved under the federal statute is substantially similar to that which appears in our own.
18 U.S.C. § 751(a) provides in pertinent part:
> Whoever escapes or attempts to escape from the custody of the Attorney General . . . or from any institution or facility in which he is confined . . . or from any custody under or by virtue of any process issued under the laws of the United States . . . [shall be punished].

NRS 212.090 provides in pertinent part:
> Every prisoner confined in a prison, or being in the lawful custody of an officer or other person, who escapes or attempts to escape from such prison or custody . . . shall be punished. . . .

added.) *Id.* at 413. We agree with this reasoning in *Bailey,* and conclude that our legislature also intended that the crime of escape be treated as a continuing one. *See supra* note 3.

Petitioner also contends that this court has implicitly considered escape not to be a continuing offense because we have previously held that, in order to establish the defense of duress, an escaped prisoner must show, *inter alia,* that he immediately reported to the proper authorities after obtaining a position of safety. *See* Jorgensen v. State, 100 Nev. 541, 688 P.2d 308 (1984); Wolfe v. State, 95 Nev. 240, 591 P.2d 1155 (1979). Petitioner reasons that if escape were a continuing offense, a special duty to report for those asserting the duress defense would be superfluous because all escaped prisoners have a continuing legal duty to return to custody in any event. We disagree. It is precisely *because* escape is by its nature a continuing offense that the escapee must show a bona fide effort to return to custody as soon as the claimed duress has lost its coercive force. *See generally* United States v. Bailey, *supra* at 412-13. If the crime of escape occurred only during the course of the escapee's initial departure from custody, and did not continue thereafter, there would be no duty for the escapee to report to the authorities after the duress had terminated. *Cf.* United States v. Chapman, 455 F.2d 746 (5th Cir. 1972) (escapee has a continuing duty to report to authorities after escape even if initial departure from custody was lawful). Accordingly, our holdings in *Jorgensen* and *Wolfe* requiring an escapee to report to the authorities after obtaining a position of safety do not conflict with our conclusion that escape is a continuing offense.

 ██

Statutes of limitation ordinarily begin to run when a crime has been completed. Pendergast v. United States, 317 U.S. 412, 418 (1943). Escape is a continuing offense that is recommitted each day an escaped inmate is not in a custodian's lawful custody. The statute of limitations for the continuing offense of escape does not, therefore, begin to run until the criminal conduct ceases and the prisoner is retaken into custody. *See* Johnson v. State, 272 So.2d 597 (Ala.Crim.App. 1973). Consequently, the statute of limitations did not begin to run in the present case until Campbell was retaken into custody in September of 1984. The amended complaint, filed one month later, was therefore timely filed.

Accordingly, we hereby deny the petition.[6]

---

[6]THE HONORABLE CLIFF YOUNG, Justice, did not participate in the consideration of this case.